# JOSEPH CUMMINS

*v.*

# JEFFERSON P. CRAWFORD.

1. THREATS* — *as a justification for shooting.* Threats of the plaintiff, made some twenty days before, to take the life of the defendant, without proof of any attempt to execute them, either before or at the time of the shooting, is no justification for the defendant's shooting and wounding the plaintiff, although the latter, when approaching in the direction of the place where the defendant was, had a gun on his shoulder, but did not see the defendant until after he was shot, and there was plenty of time for the defendant to have got away after he saw the plaintiff approaching.

2. Where the defendant, being well armed with a double-barreled gun, and sitting in the road, saw the plaintiff, who had made threats to kill him, coming

---

*On the trial of a party for an assault with intent to commit a bodily injury, it was held that previous threats of the prisoner might be proven. *Sharp* v. *The People,* 29 Ill. 464. Whether a threat is to be regarded as a warning not to do violence. *Chapman* v. *Cawrey,* 50 Ill. 512. Threats of the party killed not coming to the knowledge of the accused. *Adams* v. *The People,* 47 Ill. 376; *Campbell* v. *The People,* 16 Ill. 17.

Syllabus.

towards him in the road with a gun on his shoulder, concealed himself, and while the plaintiff was not aware of his being in the vicinity, and without any hostile demonstration on his part to excite any apprehension of serious danger, took deliberate aim and shot the plaintiff, when he could easily have got away before the plaintiff came up, and the defendant stated that he intended, at the time, to kill the plaintiff, it was *held*, that the defendant's act was without a shadow of justification in law.

3.  Before a party may attack or inflict bodily harm upon a person who has made threats to take his life, however well founded his apprehensions may be, there must be some overt act from which an intention may be reasonably inferred to carry into effect the threats of personal violence, and that the danger is imminent.

4.  EVIDENCE—*of previous threats.* In trespass, for shooting and wounding the plaintiff, the defendant offered to prove by witnesses that they had heard the plaintiff make threats against the life of defendant some twenty days before the shooting, which evidence the court excluded: *Held,* that the evidence was properly excluded, and that it was not admissible even in mitigation of damages.

5.  Unless the threats proposed to be proved are so recent as to become a part of the transaction being investigated, such testimony is not admissible under any known rule of law for any purpose.

6.  SAME—*character of parties in trespass for personal violence.* In trespass, for shooting and wounding another, evidence of the previous character of the parties is inadmissible.* As a general rule, the character of the plaintiff as for violence, in such a case, is not the subject of inquiry. Particular acts, when they constitute a part of, or explain the transaction, may sometimes be shown in mitigation of damages.

7.  DAMAGES—*whether excessive.* In trespass, for lying in wait and shooting the plaintiff, inflicting wounds that might disable him for life, when the assault was wanton and not made under the influence of sudden passion, but planned and executed with deliberation and a matured purpose to take life, $1950 was held not to be excessive, the case being one proper for exemplary damages.

8.  NEW TRIAL—*misconduct of jury.* An affidavit on a motion for a new trial, that the verdict was found by each juror marking down the amount of damages he deemed proper, and dividing the aggregate of the several sums by twelve, with an agreement the result should be the verdict, if made merely on information and belief of the defendant, is clearly insufficient.

APPEAL from the Circuit Court of Clark county; the Hon. OLIVER L. DAVIS, Judge, presiding.

---

*When the good character of the accused may avail him. See *Walsh* v. *The People,* 65 Ill. 58. On the same subject, there is a review of the authorities in *Hopps* v. *The People,* 31 Ill. 385. ·

This was an action of trespass, brought by Jefferson P. Crawford against Joseph Cummins, for the shooting and wounding of the plaintiff by the defendant.

The defendant pleaded not guilty and two pleas of *son assault demesne.* A trial was had, resulting·in a verdict ·and judgment in favor of the plaintiff and assessing his damages at $1950.

On the trial, the defendant offered to prove that the general character of the plaintiff was that of a violent and dangerous man, and that the general character of the defendant, for over thirty years, had been that of a peaceable, quiet and law-abiding citizen, which, on objection, the court refused to allow. The other material facts appear in the opinion of the court.

Mr. J. H. HALLEY, and Mr. H. B. DECIUS, for the appellant.

Mr. E. CALLAHAN, and Mr. J. W. WILKIN, for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

On the 27th day of November, 1875, plaintiff, while passing along the highway, was shot by defendant, inflicting severe wounds, and this action was brought to recover damages for the injuries sustained. The facts are so fully proven they admit of no controversy. Defendant's own statement may be received as presenting· substantially the facts·as they occurred. In the morning of the day on which the shooting· took place, defendant, who was sheriff of his county, was preparing to go out to serve papers, and while waiting for his buggy he sat down at the corner of the fence, probably the ends of some of the rails extending out past him, at a point two or three panels east of the lane coming from the south that intersects the road running east and west. He had not been sitting there long when his brother told him plaintiff was coming. Hastily putting away his papers he had been examining, he told his

brother to go away, as he did not wish him mixed up in the affair. Plaintiff was then some considerable distance away, walking on the highway in the direction of defendant, carrying his gun on his shoulder with his arm over the breech and his hand thrust into his bosom. As plaintiff approached, defendant took a rest on the corner of the fence for his gun, and when he was near enough, defendant, taking deliberate aim, shot him. Defendant says plaintiff still appeared to be advancing towards him when he fired the other barrel of his gun at him. The gun used by defendant had a double barrel; one was loaded with powder and leaden ball, and the other with powder and small " turkey shot" or " small buck shot." The one first discharged was the rifle ball, which took effect in plaintiff's left breast, passing through a part of the lungs and coming out near the shoulder blade, and the shot from the other barrel took effect in his leg.

It is not probable plaintiff either saw defendant or was aware of his presence in that immediate vicinity until he was shot. In giving an account of the affair at the office of the justice of the peace, soon after it happened, defendant says he did not think plaintiff saw him until after he fired the second shot. Apparently defendant was under no mental excitement whatever, but coolly and deliberately planned to take the life of plaintiff. According to his own statement he was not nervous, and his own account, as given on the witness stand, expressive of his intention, is: " I intended to kill; that was my purpose when I shot." Other testimony is to the effect he expressed regret that he had not killed plaintiff, and that he was " afraid he would have to do it over."

The only defense insisted upon is, that plaintiff had, at an election held some twenty days before, and perhaps on some other occasions about that time, threatened to take the life of defendant, and the reason assigned was, that defendant had accused plaintiff of being guilty of a petty larceny. In giving his testimony, defendant was permitted to state that such threats had been communicated to him previous to the shoot-

ing; that he believed plaintiff would carry his threats into execution; that he believed, if they should meet, one or the other would be killed, and that he shot him to save his own life. Other witnesses testified that defendant made the same statements in the history he gave of the transaction at the office of the justice of the peace, and even stated some of the threats he understood plaintiff had made against his life.

There is no pretense plaintiff had made any effort to carry such threats into execution, either at the time of shooting or at any other time. There is no evidence that defendant expected plaintiff at that place on that morning, nor that he took his position with a view to wait for him; but it is proven that, after he saw him coming, he did lie in wait for him, and, from the place where he was concealed from the view of plaintiff, shot him, when plaintiff was not aware of his presence in the vicinity. After defendant saw plaintiff coming on the highway, there was plenty of time for him to have walked away, had he chosen to do so, and thus avoided any difficulty. His brother, at his request, did go away. Nor had defendant any well founded reason to apprehend danger. He was well armed, and had plaintiff put forth any efforts to put into execution threats which defendant understood he had made against his life, or made any demonstrations of violence that would have excited in the mind of a reasonable person apprehensions of serious danger, defendant could have defended himself. Instead of waiting to see whether plaintiff had any hostile intention towards him, or whether he was in the slightest danger of being attacked, he shot him, without even apprising him of his presence. The act was without a shadow of justification in the law.

But defendant offered to prove, on the trial, by a number of witnesses, that they had heard plaintiff make threats against the life of defendant, some twenty days before the shooting. That evidence was excluded, and the decision of the court rejecting it is assigned for error. The evidence was not offered as a matter of defense, but in mitigation of punitive or exem-

plary damages; but our opinion is, it was not competent for any purpose. There is no principle with which we are familiar on which such evidence is admissible. Unless the threats which it is proposed to prove are so recent as to become a part of the transaction being investigated, such testimony is not admissible, under any known rule of evidence, for any purpose. So this court has declared, in *Sorgenfrei* v. *Schroeder*, 75 Ill. 397. Although threats may have been made against the life of another, such party may not assail or take the life of the person making such threats, where he has done no act indicating a purpose to carry such threats into execution, or where there are no circumstances that would induce the belief in the mind of a reasonable person there was imminent danger he would do so. The annunciation of a principle that would justify a person to lie in wait to take the life of another, because, at some previous time, he may have made threats of bodily harm to him, would be fraught with dangerous consequences to society. It would license crime but little less in turpitude than assassination. Before a party may attack or inflict bodily harm upon a person who has made threats against him, however well grounded his apprehension may be, there must be some overt act from which an intention may be reasonably inferred to carry into effect his threats of personal violence, and that the danger is imminent. Illustrative of this view of the law are the following cases: *Lander* v. *State*, 12 Texas, 462; *Evans* v. *State*, 44 Miss. 762.

These salutary principles have been applied, in all their strictness, in civil actions for the recovery of damages in cases of assault and battery. The rule deducible from the cases on this subject is, that such testimony as that offered, and rejected by the court, in this case, is not admissible, even in mitigation of damages, in that class of actions.

In *Lee* v. *Woolsey*, 19 Johns. 318, the Chief Justice, in delivering the opinion of the court, said—and there is great force in his remarks: "It appears to me neither to comport with sound policy nor law to allow an inquiry into antecedent

facts, in such cases as this, unless they are fairly to be considered as a part of one and the same transaction. A contrary course would encourage breaches of the peace, personal rencounters and every species of brutal force, and would tend to uncivilize the community." The same general doctrine was declared by this court in *Sorgenfrei* v. *Schroeder, supra,* and in cases in other courts. *Avery* v. *Ray,* 1 Mass. 11; *Ireland* v. *Elliott,* 5 Iowa, 478; *Tullis* v. *Forrest,* 2 Duer, 310.

There can be no pretense that defendant was in any immediate danger of his life or of any bodily harm at the hands of plaintiff, when he attempted, as he admits, to take his life by a well aimed shot. There was nothing to excite apprehension, even, in the mind of any reasonable person. Plaintiff had done no overt act that indicated any intention to attack defendant; and had he done so, defendant was fully armed and prepared to defend himself. Simply because he had heard plaintiff had made threats against his life, defendant planned to take the life of plaintiff, and, from his secret place, undertook to carry out his terrible purpose. This the law will not tolerate.

Had defendant entertained fears of bodily harm at the hands of plaintiff, it was his privilege, under our laws, to have him placed under bonds to keep the peace. That would have induced investigation, which would have developed whether there was really any danger to be apprehended, or whether the threats defendant had heard, if made at all by plaintiff, were anything more than mere bravado. The law will not, and ought not, for the peace of society, to sanction lying in wait to punish another summarily who such party may suspect, or even believe, may have meditated doing him a personal injury, however well founded his belief may be.

The evidence offered as to the character of plaintiff and defendant was properly rejected. We do not understand the characters of the parties, whether men of violence or law-abiding citizens, were involved. No matter if plaintiff was a bad man, that did not afford defendant any pretext for seeking to take his life, and the injuries plaintiff may have suf-

fered are in no manner mitigated by the fact defendant may have been previously a law-abiding citizen. As a general rule, the character of plaintiff, in such cases, is not the subject of inquiry. Particular acts, where they constitute a part of or explain the transaction, may, sometimes, be proven in mitigation of damages.

No material error is perceived in the instructions given for plaintiff, when they are considered together, as they should be. The modification to defendant's second instruction was proper. As asked, it was not the law. The other refused instructions were not proper, as we understand the law; and had they been given, the effect would have been to induce the jury to render a verdict not warranted by the law or evidence.

The injuries inflicted upon plaintiff are serious—such as may disable him for life; and the damages found are not excessive. Besides, the assault was wanton, and the circumstances proven would warrant the jury in imposing upon defendant a measure of punishment as exemplary damages. The law distinguishes between injuries inflicted under influences of sudden passion and such as are planned and executed with deliberation. In this case, defendant was moved by no sudden impulse, but waited calmly until his adversary advanced near enough, and then shot him, with a matured purpose to kill him. Such deliberation is seldom witnessed in the commission of acts of violence.

Objection is made to the verdict, that it was improperly found by each juror marking down the amount of damages he desired should be assessed, and dividing the aggregate of the several sums by twelve, with the agreement the result should be the verdict. The affidavit in support of that objection was made upon information and belief of defendant, and was clearly insufficient. The case of the *City of Pekin* v. *Winkel*, 77 Ill. 58, is conclusive upon this point.

The judgment will be affirmed.

*Judgment affirmed.*