Irene Webber, Appellant, v. John W. Webber, Appellee.

Gen. No. 45,735.

Opinion filed January 21, 1953.
Rehearing denied February 4, 1953. Released for publication February 4, 1953.

JOHN H. EHARDT, of Chicago, for appellant; ARTHUR A. LIEBERMAN, of Chicago, of counsel.

MURPHY, LILLIANDER, GEMMILL & JOHNSTON, ROBERT C. EARDLEY, and SUEKOFF, FROST & SPIEGEL, all of Chicago, for appellee; WILLIAM HENRY MURPHY, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is a separate maintenance action with counterclaim by the husband for divorce. The complaint was dismissed but a divorce was granted on the counterclaim. Plaintiff, counterdefendant has appealed. We shall refer to the parties as husband and wife.

The parties were married August 7, 1943. Following their marriage they lived in one room in Chicago until December 1, 1943 when the husband entered the Navy, and his wife returned to the Riverside, Illinois home of her parents. In July 1944 she went to join him in San Francisco where he was assigned. There they lived in one room until October 1, 1944 and thereafter in an apartment until February 10, 1946. They returned to Chicago in February 1946, the husband received his discharge from the Navy, and they began to live with the wife's parents in Riverside. No children were born of the marriage. On June 23, 1947 the husband left the home of his wife's parents, did not return and she filed suit September 4, 1947.

The wife alleged that the separation was without her fault, and specified several acts of cruelty. The hus-

band filed his answer denying cruelty and any fault in the separation, and alleged that during the marriage his wife declined to cohabit with him and declined before and since the separation to leave her parents and to live with him as his wife. The answer ambiguously admits living together with his wife as her husband while stating that she refused to cohabit.

Before the answer was filed, the wife on September 22, 1947 was allowed temporary alimony and fees for her attorney. Then followed a series of petitions, rules, purgings of contempt, motions to vacate and reduce, extending to February 1950.

On June 8, 1948 the husband was given leave to file his counterclaim. He alleged that he was defrauded into the marriage because his wife had falsely represented she would help him fulfill his desire for a family, and since she refused to cohabit with him was guilty of desertion beginning the day of the marriage. The wife moved to strike the counterclaim on the grounds of insufficiency for desertion, and estoppel to claim refusal of cohabitation. June 10th the "entire matter" was referred to a master in chancery. February 27, 1950 the master's report was filed.

The master found the equities with the husband; that there was no proof of ground for separate maintenance; that the wife's testimony was not credible; that she had refused "at any time" to have intercourse with her husband, had refused his good faith offer of an apartment, and should be deprived of alimony allowed under an order—"not entered on any evidence"—retroactively from the day of allowance, and should pay her own additional attorney's fees; and that the separation June 23, 1947 was due to her fault. The master concluded that because of the wife's refusal to have intercourse and to reside with the husband in the apartment he offered her that the issues in

the counterclaim be found in the husband's favor. He recommended a decree accordingly.

January 26, 1951 the husband was given leave to file an amended counterclaim alleging that the parties lived "intermittently under the same roof as husband and wife" until June 23, 1947 when they separated without his fault, because of a course of "cruel, inhuman and unkind conduct" on the part of the wife, and that subsequently she rejected his offer of an apartment. He prayed for a divorce on the grounds of desertion beginning June 23, 1947. The wife answered March 7, 1951 denying the allegations and stating she was willing to resume living with her husband.

June 13th the husband moved to dismiss the wife's complaint for separate maintenance as having been filed in bad faith and for want of equity. June 20th the motion was sustained and the complaint dismissed. The order dismissing the complaint makes no express findings but orders dismissal because the suit was filed in bad faith and want of equity. This order we assume was intended to enable the husband to avoid the rule in *Floberg v. Floberg,* 358 Ill. 626, and to use the time during which the complaint was pending in proof of desertion.

September 14, 1951 the decree was entered reciting that the hearing was on the "amended cross-complaint"; finding that the wife deserted her husband June 23, 1947; and ordering the marriage dissolved.

The wife complains of error in the admission of certain oral and documentary testimony with respect to her status in the Church. The documentary evidence was hearsay, and all the testimony on the point was irrelevant. We shall presume that the chancellor considered only the relevant, competent evidence.

The main question is whether the decree is erroneous in finding that the wife was guilty of deserting the defendant and in awarding the husband a divorce.

██ The order dismissing the complaint for separate maintenance is not before us. It finally disposed of a definitive part of the entire case, and since no appeal was taken, the dismissal order and the finding of bad faith stands. *Northern Trust Co. v. Essaness Theatres Corp.*, 348 Ill. App. 134; *Ranz v. Yaschenko*, 329 Ill. App. 274. Apparently the wife recognized this because the notice of appeal is from the divorce decree only, and her brief here prays only for reversal of that decree.

██ The hearing before the chancellor was on the complaint and the amended counterclaim. The decree recites that the chancellor "heard" the evidence and arguments. We assume therefore that the chancellor did not consider the testimony taken by the master. We shall not consider that testimony. The husband, as cross-plaintiff, had the burden of proving that he was justified in leaving plaintiff on the night of June 23, 1947. No answer to the amended counterclaim appears in the record but we assume the chancellor treated the many pleadings as having formed the issues.

The vital issue of fact was whether the wife gave her husband good cause for leaving her. The parties slept in one room, and ate, at the wife's parents' home. The immediate cause leading to the separation was the wife's request that her husband pay her parents the "coming week's board" of $20, and the past due "board" of $250. He testified that he told her he had some money and would leave it on the dresser for her the next day. She testified that she reminded him he had previously ignored notes she left on the dresser for him, that he became angry and despite her pleas not to do so, packed his clothes, treated her roughly and left.

Plaintiff was substantially corroborated in this testimony by her mother. Her brother gave corroboration

158

indirectly by testifying that in the preceding March the husband had told him he intended to break up the marriage. The husband's testimony is that when the mother appeared he was holding his wife's hands to keep her "from kicking" him, and that she had threatened to kill him.

We think the testimony with respect to the threat is unconvincing. If the wife said "three times" that night while her husband was trying to leave "I am going to kill you" she spoke when she had no knife, gun or other weapon in her hands. He weighed 245 pounds at the time, and she weighed at most 115 pounds. Furthermore, the husband relies on his alleged good faith proffer to plaintiff of an apartment a few months after the separation in a desire to resume the marriage state. We think this indicates he did not take the "threats" seriously.

 The decree is based on the finding that plaintiff deserted her husband without his fault June 23, 1947 and has absented herself from him for more than a year. The court erred in awarding a divorce to the husband. The wife's alleged "nagging" him for money, attempting to kick his shins, tearing off his shirt, and saying three times "I am going to kill you" with no basis for reasonable fear that she would or could carry out the threat, is not enough to warrant his leaving her so as to make her guilty of deserting him.

 To justify counterplaintiff in leaving his wife for her cruelty, the acts relied on must be of such a character that they would support a divorce for cruelty. *Holmstedt v. Holmstedt,* 383 Ill. 290. The threat which frightened him must have been of such a character as to constitute cruelty; mere words are not enough. *Lipe v. Lipe,* 327 Ill. 39. We think that what is said of a threat in *Cummins v. Crawford,* 88 Ill. 312, a trespass case, is pertinent here. The words used must be said under circumstances which will induce the

159

belief in the mind of a reasonable person that there was imminent danger the threat would be carried out. Plaintiff had no weapon and was presumably powerless when she said the threatening words. He suggests he feared she might have his gun which he had lost. There is no testimony that she had the gun, or ever had it, or that he ever knew she had it, or where he lost it or when.

It is our opinion that on all the evidence relevant to the question, reasonable men could not differ in the inference to be drawn. The only reasonable inference is that the husband was not justified in leaving his wife the night of June 23, 1947. She could not therefore as a matter of law have been guilty of desertion. The decree is erroneous and is hereby reversed and remanded with direction to dismiss the counterclaim for want of equity.

*Reversed and remanded with direction to dismiss.*

Lewe, P. J. and Feinberg, J., concur.