Krystyna Rutkowska Nalepa, Plaintiff-Counterdefendant, Appellant, v. Anthony Nalepa, Defendant-Counterplaintiff, Appellee.

Gen. No. 51,703.

First District, Fourth Division.

December 11, 1968.

Rehearing denied February 4, 1969.

Daniel D. Glasser, of Chicago, for appellant.

Irving Goodman and Louis Z. Grant, of Chicago, for appellee.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff appeals from a decree of divorce granted to her husband on his counterclaim in her suit for separate maintenance.

Plaintiff's complaint sought separate maintenance on the ground of desertion. Defendant's counterclaim prayed for annulment on the ground of fraud, or divorce on the ground of cruelty. The counterclaim was amended by adding what he claims were sufficient allegations of constructive desertion, and it was on that ground that the decree was awarded to defendant.

As to the property rights of the parties, the decree barred alimony and provided that, in lieu thereof, defendant pay to plaintiff $11,300 ($3,500 in 30 days and the balance at the rate of $30 per week). Arrangements had been made whereby the County Welfare Department would pay her rent of $98 per month. Defendant was also ordered to pay plaintiff's attorney's fee of $1,000. The money provisions of the decree are not contested in this court.

The parties were married in Poland in January 1961, and came to this country later that year. On July 26, 1962, plaintiff and defendant went to see a doctor about plaintiff's difficulty in walking, and they were told that

226

she was suffering from multiple sclerosis.* They ceased living together as husband and wife from that date, although they continued to live under the same roof.

A large part of defendant's brief in this court is devoted to the argument that plaintiff had refused to cohabit with defendant, and that this was an important factor to be considered in the matter of constructive desertion. Cases cited are Karman v. Karman, 24 Ill App2d 123, 164 NE2d 521, and Moyer v. Moyer, 17 Ill App2d 404, 150 NE2d 394, which are not in point here, because this record is absolutely devoid of any evidence that plaintiff had refused cohabitation. As testified to by defendant himself, they simply ceased living together as husband and wife on the day he learned from the doctor that she had multiple sclerosis. He testified further that he would not have married her (a year and a half earlier) if he had known she was afflicted with this disease; and his counterclaim for annulment was based on the allegation that she knew of her illness at that time and had defrauded him by keeping it a secret. Even if this were to be considered a valid ground for annulment—a point we do not pass upon—there was no evidence to support it, and the trial court struck from the counterclaim all allegations relating to annulment. No cross appeal having been filed, that question is not before us.

■ ■ We face a similar situation in regard to defendant's allegations of cruelty, which were also stricken for lack of supporting evidence. He testified to numerous acts of physical cruelty on plaintiff's part (and she suffering from multiple sclerosis), but the chancellor obviously didn't believe him. We share that incredulity, and when the cruelty charges, with their concomitant threats of more cruelty, are eliminated from considera-

---

* Plaintiff testified that this was the first she knew of any such diagnosis. Defendant also testified that it was the first he knew of it.

tion, we find it impossible to affirm the trial court's conclusion as to the existence of constructive desertion. As we read the record, all that is left after elimination of the cruelty charges, is the kind of proof which this court held to be insufficient when it said in Nusser v. Nusser, 4 Ill App2d 538, 544, 124 NE2d 549:

> As to the ground on which the decree was granted, it was early stated and has since been followed by many cases in this State that the "reasonable cause" which justifies a husband or wife to desert or abandon the other must be such as would entitle the person abandoning the other to a divorce. Fritz v. Fritz, 138 Ill 436; Scheuer v. Scheuer, 247 Ill App 463; Swan v. Swan, 331 Ill App 295.

See also Webber v. Webber, 349 Ill App 154, 159–160, 110 NE2d 95, and cases there cited.

The decree could not have been based upon any loving attempts on the part of defendant to preserve the marriage, or anything of the kind, because defendant himself testified that after he had learned of his wife's illness in 1962, but before he had left the home in 1964, he had made what plaintiff argues was a devious attempt to get rid of her, an act which was completely incompatible with constructive desertion on her part. We refer to the fact that two or three months before their separation, he had gone to the immigration authorities to tell them that his wife was involved with the communists, and he had done this, he said, because he was a true American. The inference drawn from this episode in plaintiff's brief is that defendant was seeking to have his wife deported to Poland, a not unreasonable assumption, especially since it went unchallenged in defendant's brief.

In fact, defendant's testimony seems to have been at odds with the probability of truth in another respect. He said that at the time plaintiff had told him to leave, she stated that a man named Povla was her lover, and

that as soon as the divorce came through, they were getting married. This seems to have been pretty well negated by the fact that she was not seeking divorce at that time, and, as a matter of fact, has pursued this appeal to avoid it.

█ This brings us to what we believe must have been the reason behind the chancellor's decree in favor of defendant. As a conscientious person, he apparently reached the good faith conclusion that these parties would be better off going their separate ways under a divorce decree than they would be living apart from each other under a decree of separate maintenance. And well they might. We believe, however, that this decision was not one to be made by the court on the record in this case, but only by the plaintiff.

The last of the evidence was heard on March 29. On April 7, the chancellor announced his decision and informed the parties of the contents of the decree. At the request of counsel for plaintiff that the court explain "the question of the divorce" to plaintiff, the court made the following statement (which was translated into Polish for the benefit of plaintiff):

> Inasmuch as she did not agree to a divorce decree, I have entered a divorce decree in favor of Mr. Nalepa, . . . this is procedure, no technical effect.

█ It is our conclusion—as it was apparently that of the trial court initially—that the evidence in this record abundantly supports plaintiff's complaint. It is also our conclusion that, on the basic issues of the case, the record does not support the decree which was entered. The decree is therefore reversed, and the cause is remanded with directions to enter a decree of separate maintenance in favor of plaintiff.

Plaintiff has also asked this court to reverse that part of the decree which found that defendant was not to be held responsible for the support of plaintiff's child of a

former marriage in Poland. We believe that plaintiff's proof was insufficient in this regard, so that part of the decree is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

McCORMICK, P. J. and DRUCKER, J., concur.