Eugene F. McDonald, Jr., Plaintiff, v. Inez Riddle McDonald Neale, Defendant.
Inez Riddle McDonald Neale, Petitioner-Appellant, v. Eugene M. Kinney and Edward McCausland, Co-Executors of the Will of Eugene F. McDonald, Jr., Deceased, Respondent-Appellees.

Gen. No. 48,292.

First District, First Division.

April 30, 1962.

Louis G. Davidson and Dryden, Harrington, Horgan & Swartz, of Chicago, for appellant.

Thomas C. McConnell, of Chicago (McConnell, Paschen & Curtis, of counsel), for appellees.

MR. JUSTICE BURMAN delivered the opinion of the court.

This action was commenced on December 5, 1958, by Inez Riddle McDonald Neale, to set aside a divorce decree entered on September 23, 1947, and the stipulated property settlement incorporated therein. At the close of petitioner's evidence the trial court dismissed her claim for want of equity, and this appeal followed.

Petitioner and respondent, Eugene F. McDonald, Jr., were married on July 16, 1931. On August 6, 1947, respondent * instituted divorce proceedings on the grounds of desertion. Upon being served with summons petitioner engaged an attorney, and on September 19, 1947, the matter was heard by agreement of the parties "on complaint and answer as in cases of default." The decree of divorce awarded respondent custody of their two children (a daughter then ten and a son then five), subject to rights of visitation by petitioner. The decree also approved the written agreement by which the parties settled their property rights. According to the agreement petitioner received the following: $125,000 in lieu of alimony, support, dower, and inheritance; $49,742 (or $34 per share) as consideration for assigning to respondent her title to 1463 shares of capital stock of Seneca Securities Corporation, a Delaware Corporation which controlled the Zenith Radio Corporation; $10,000 as consideration for her patent rights to an invention developed by respondent; $5,000 as consideration for the transfer to respondent of petitioner's interest in a residence, barn and other buildings known as the "McDonald Residence" on Mackinac Island, Michigan, and for the assignment of her interest in the furniture, silverware, linens and other personal property in that residence; and 1,000 shares of the capital stock of Zenith Radio

---

* Respondent, Eugene F. McDonald, died on May 15, 1958, and an order was entered substituting Eugene M. Kinney and Edward McCausland, co-executors of McDonald's estate, as parties to the action at bar.

Corporation, which, according to the agreement, completed a previous gift of 1,100 shares, not theretofore fully delivered by respondent.

Petitioner founds her right to recover upon the following propositions: first, that the decree of divorce is void on its face; second, that by virtue of § 72 of the Civil Practice Act [Ill Rev Stats c 110, § 72 (1957)] the decree should be set aside on the grounds of fraud, duress and mental incapacity; and finally, that the property settlement, aside from the validity of the divorce decree, should be set aside on the grounds of fraud, duress and mental incapacity. We will discuss these alternative contentions in the order mentioned.

Petitioner argues that the decree is void because the evidence in the divorce proceedings plainly reveals insufficient grounds for divorce under the Illinois statute, and that the fatal defect can be observed on the face of the decree since it was parenthetically stated therein, "a certificate of which evidence having been duly signed and sealed is filed herein and made a part hereof."

 It has long been the law of this state that a void judgment may be set aside at any time by motion or petition. [Hustana v. Hustana, 22 Ill App2d 59, 64, 159 NE2d 265; Ill Rev Stats c 110, § 72(7) (1961)]. The error importing voidness, however, must be apparent from an examination of the record, as the court cannot review the evidence. (Evans v. Clement, 14 Ill 208; Cullen v. Stevens, 389 Ill 35, 58 NE2d 456; Collins v. Collins, 14 Ill2d 178, 151 NE2d 813.) The record, in a chancery case, consists of the pleadings, process and decree (Collins v. Collins, 14 Ill2d 178, 183, 151 NE2d 813). Although the evidence in the instant case was incorporated into the decree by reference and may thus be said to have become a part of the record, its character as evidence was not thereby

changed and it cannot therefore be reviewed in this type of proceeding. The rule is founded upon sound considerations: "a re-examination of the evidence upon collateral attack would result in far-reaching consequences, involving, among other things, the disturbing of titles long considered settled as well as weakening the jurisdictional presumption that has always obtained." Cullen v. Stevens, 389 Ill 35, 42, 58 NE2d 456.

It is clear from the record in the divorce proceedings that petitioner was personally served, that she stipulated to have the cause heard as a default matter, and that she was represented by her counsel at the hearing. The decree found, as alleged in the complaint, that ". . . on, to-wit, June 1, 1945, the defendant wilfully deserted and absented herself from the plaintiff without any reasonable cause and without fault on his part, and has continued so to do without interruption for more than two (2) years since said date to the present time and the filing of the complaint herein." Petitioner would have us declare that the trial judge found that the statutory grounds of desertion and entered the decree on the basis of mistaken judgment. This we cannot do. (Van Dam v. Van Dam, 21 Ill2d 212, 171 NE2d 594.) Petitioner's right to seek review of the transcript of evidence, on appeal or by writ of error, has long since passed. The record does not show on its face that the divorce decree was erroneous.

The principal question remaining concerns petitioner's allegations that she was mentally incompetent at the time of the execution of the property agreement and the entry of the divorce decree, that the settlement and decree were obtained by means of fraud and duress, and that she brought the instant suit within the allowable time after the fraud and duress came to an end. After hearing considerable testimony consuming about 5,000 pages of transcript, and after examining

145

numerous exhibits and depositions the trial judge found that the evidence was not sufficient to justify vacating the decree upon these grounds.

At the outset petitioner contends that the trial judge erred in failing to consider the evidence in the proper manner at the close of petitioner's case, i. e., in the light most favorable to petitioner, together with all reasonable inferences which can be drawn from the evidence. So considered, argues petitioner, the evidence clearly reveals a prima facie case of fraud, duress and mental incapacity. It is clear from the language of the statute that petitioner misinterprets the role of the trial judge in ruling on a motion presented under § 64(5) of the Civil Practice Act [Ill Rev Stats c 110, § 64(5) (1961)]. That section, as amended in 1955, provides that in equity and nonjury law cases the defendant may move for a finding in its favor at the close of plaintiff's case, and that "in ruling on the motion the court shall *weigh the evidence.*" This change in the Civil Practice Act, expressly for the purpose of expediting trials, permits the trial judge, at the close of plaintiff's case, to evaluate the evidence and determine the credibility of witnesses. Under such circumstances the trial judge must decide whether the inferences and conclusions adduced by him from the evidence result in a prima facie case before ruling on the motion. Our view of the trial judge's role here is substantiated not only by the plain language of the section and the historical notes pertaining thereto, but also by the view uniformly taken of the comparable provision found in Federal Rule 41(b) [Fed R Civ P 41(b)].* (Allred v. Sasser, 7 Cir, 170 F2d 233; Penn-

---

* Federal Rule 41(b) reads, in part, as follows:
 After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has

Texas Corp. v. Morse, 7 Cir, 242 F2d 243, 246; Chicago & Northwestern Ry. Co. v. Froeling Supply Co., 7 Cir, 179 F2d 133, 135.) The trial judge was thus bound to give the evidence such weight as he believed it entitled to receive. We recognize, however, that great caution should be exercised by a trial judge before determining a lawsuit after having heard only one side of the case.

■ The petition in the instant case was filed more than eleven years after the entry of the divorce decree. At no time during that period did petitioner seek relief by way of a bill of review or writ of error coram nobis. Both of these procedural methods, upon which the period of limitation was one year, were superseded by the unified procedure provided in § 72 of the Civil Practice Act which became effective on January 1, 1956. The part of that section pertinent here reads:

(3) The petition must be filed not later than 2 years after the entry of the order, judgment or decree. Time during which the person seeking relief is under legal disability or duress or the ground for relief is fraudulently concealed shall be excluded in computing the period of 2 years.

The instant petition was filed neither within the limitation period provided under the former practice nor within that afforded by § 72(3). Petitioner claims that the limitation period was tolled because of the continuing duress exerted over her by respondent, which did not terminate until May of 1958, when the respondent died. To sustain this position the petitioner offered testimony to show that she was seriously ill, with resulting weakness and nervousness, during the summer

shown no right to relief. In an action tried by the court without a jury the court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a).

of 1947, and that consequently she was unable to comprehend or transact any important business matters at the time the property settlement was negotiated and the divorce obtained. Further testimony was introduced to show that respondent was an unusually strong and domineering person, that he drank excessively during their marriage and frequently discharged firearms in a reckless manner, that he intimidated petitioner and her parents and caused them to fear him greatly, and that his duress continued through all the years that followed until respondent died, "because of the great fear that she had of severe physical injury or even death at his hands."

The evidence reveals that the petitioner was never declared or adjudicated insane; that shortly before the divorce proceedings petitioner and a friend, in anticipation of the money from the property settlement, made plans to enter a photography business in Jacksonville, Florida, and after the entry of the decree consummated those plans and actively engaged in said business; and that petitioner subsequently worked as a private secretary for General Omar Bradley who testified that petitioner was "perfectly capable" and not insane during the time she worked for him from November, 1954 to March, 1957. There was no showing of duress stemming from respondent's drinking and use of firearms after the termination of the marriage. During the eleven years after the entry of the divorce decree petitioner and her parents carried on extensive correspondence with the respondent, and none of these letters revealed that petitioner and her parents felt themselves subject to threats or duress. Indeed, on March 12, 1948, petitioner wrote to respondent, shortly after opening her photography studio in Florida:

148

March 12, 1948

Dear Gene:

Had your lovely letter reached me yesterday it could have saved me real disappointment as I awaited in vain a message from you on that all-important day. I note that your letter was dictated on the eighth and posted on the ninth by ordinary mail. That your good wishes were three days on the way was certainly no fault of yours and in no way due to a lack of thoughtfulness on your part.

I am sending you under separate cover Trabue's first formal newspaper advertisements. (We were previously mentioned twice in the "Chatter" column of Society Reporter Alice Withee.) I am also enclosing a photograph of me taken on the night of my opening with Mr. Stewart, Eastman's special representative. We are looking at a color photograph (Eastman Ektachrome Dye Transfer process) of the pin you gave me designed by Frisch. As it is in the form of a Lily, you will note that two lilies were photographed with it—all in the spirit of the Easter Season. I am sorry you cannot see a close-up, as the delicate tracery of the veins in the petals of the lily are plainly reproduced.

The opening was a huge success and very well attended. I am glad you approved my choice of the lucky eleventh.

All the best,
Inez.

On several occasions during the eleven year period petitioner consulted attorneys about filing proceedings to vacate the divorce decree and to obtain custody of

149

her children. No action ever resulted from these conferences. Petitioner's father testified that on each of those occasions the respondent called him threatening to publicize scandalous facts about petitioner's adultery during their marriage (which charges had been voiced to petitioner, her parents and her attorney prior to the divorce proceedings) and warning that newspapers throughout the country would publish this information to the humiliation of petitioner, her parents and her children. The father admitted, however, that on one of these occasions in 1955, his reply to respondent was to the effect that he (the father) couldn't do anything about it. The trial judge could well have inferred that, unless such threats and charges against petitioner were true and she feared exposure, they would have had no effect upon petitioner and her parents, and in fact she would not have relinquished custody of her children in the first place. The trial judge could likewise have concluded that even if the charges were untrue they would not deter one genuinely seeking the custody of her children, but rather would induce her to seek the much needed judicial relief. In any event, the trial judge had before him ample evidence to support the finding that petitioner was not mentally incompetent throughout the eleven year period and was not subjected to, or affected by, threats and pressures sufficient to constitute legal duress. Accordingly, it is our view that the trial judge properly determined that the period of limitations under § 72(3) was not tolled and that petitioner's claim is therefore barred.

■ ■ We are also of the opinion that the trial judge correctly ruled upon another question which is equally dispositive of this controversy. The trial judge determined:

that, subsequent to the entry of the instant decree, the petitioner, acting free of any duress and as her

own free and voluntary act, in May of 1956, two years before the death of Eugene F. McDonald, Jr., married one William G. Neale at Phoenix, Arizona; that such marriage was consummated in reliance upon the validity of the instant decree; and that petitioner therefore accepted the benefit of said decree and is estopped to attempt to vacate the same or set it aside in this proceeding.

This rule of estoppel has been followed repeatedly by courts of this and many other states. (Scase v. Johnson, 130 Ill App 35; Pierotti v. Pierotti, 343 Ill App 116, 98 NE2d 875; see also, Rediker v. Rediker, 35 Cal2d 796, 221 P2d 1, 20 ALR2d 1152 and authorities cited therein.) Petitioner accepted the proceeds of the property settlement and put them to her own use. As respondent had died when petitioner filed her claim, no question of her status as a wife is involved. All she seeks is an additional portion of respondent's assets. Petitioner remarried in 1956 thereby relying upon and asserting the validity of the divorce decree. Her second marriage continued to exist in all respects at the time she filed this petition in 1958. She had not annulled it, nor had she disavowed it in any way at any time other than in the instant suit which was filed solely for the purpose of obtaining part of respondent's estate. The rule of estoppel, founded upon the public policy of protecting the marital status and good character of innocent third persons, the legitimacy of children, and the rights and position of persons whose status has been finalized by decree of divorce, will not permit parties to assert inconsistent legal rights as petitioner has here attempted. Under the facts of this case the rule of estoppel was appropriately applied.

Petitioner cites James v. James, 14 Ill2d 295, 152 NE2d 582, and Collins v. Collins, 14 Ill2d 178, 151 NE2d 813, to support her view that she is not estopped to maintain these proceedings by reason of having

accepted the financial benefits of the decree and having remarried. Neither case squarely meets the issue as it is presented under the instant facts. In James the question was confronted on an appeal. The petition to vacate was filed within 30 days of the entry of the decree under section 50(6) [Ill Rev Stats c 110, § 50(6) (1957)] while the trial court still had full control over the decree and jurisdiction to vacate or modify it. Also, the petitioner, when filing during the 30-day period, offered to do equity by returning the amount received or by doing whatever the court deemed just and reasonable. Under those facts it is clear that in James there amounted to no acceptance at all in contrast to the kind of acceptance and use of the financial benefits of the instant decree which would indicate acknowledgment of and reliance upon the decree and thus give rise to estoppel. The James matter was heard as a continuing aspect of the original litigation and within such time and under such circumstances that the party opposing the appeal had thereby suffered no detriment. Thus the Supreme Court held that the acceptance of payments for herself and her attorney would not bar petitioner from appealing from the decree where, within 30 days from the entry thereof, petitioner had offered to do equity in the manner indicated above. Certainly, under the facts at bar previously discussed in this opinion, that is not the question before us. In Collins the Court's language concerning the effect of petitioner's remarriage upon her right to collaterally attack the decree was stripped of its significance when the Court pointed out that "this issue was not presented to the lower court for consideration, and is obviously waived." Collins v. Collins, 14 Ill2d 178, 185, 151 NE2d 813.

 Were we to rule favorably for petitioner upon each of the foregoing questions, we would still be compelled to hold that the trial judge properly dismissed

the petition, because we find substantial evidentiary support for the conclusion that petitioner did not establish her case of fraud, duress, and mental incapacity, despite the fact that respondent, his attorney, and petitioner's attorney were not alive to give testimony. The evidence damaging to petitioner's cause was elicited through cross-examination and from the introduction of depositions and exhibits which had been used in part by petitioner.

It appears that upon the recommendation of Howard Ellis of the firm of Kirkland, Fleming, Green, Martin and Ellis, petitioner and her father (who was a banker) employed Charles F. Rathbun to represent her in her marital dispute and paid him a retainer of $1,500. Petitioner claimed that Rathbun fraudulently colluded with respondent, in derogation of petitioner's interests, in (1) receiving $25,000 in attorney's fees from respondent without disclosing that fact in the court proceedings; (2) permitting petitioner to agree to a property settlement which was grossly inequitable in light of respondent's great wealth, and which amounted to virtually nothing when set off against the value of the property petitioner turned over to respondent; and (3) inducing petitioner not to contest the charge of desertion when Rathbun knew the parties had been living under the same roof until shortly before the divorce action was instituted.

Petitioner does not contend that respondent had anything to do with the selection of Rathbun as her attorney. There was evidence indicating that petitioner and her father were notified that respondent would be willing to pay Rathbun's fee, if not prior to the execution of the property settlement, at least prior to their receipt and acceptance of the money stemming from the settlement. In February of 1948, many months after the entry of the divorce decree, petitioner's father wrote Rathbun thanking him for all the nice things

153

he had done for petitioner. Moreover, the father admitted that at no time during Rathbun's life did he accuse the latter of having defrauded petitioner.

The evidence offered to show that petitioner did not know respondent's financial worth was highly inconclusive. On the other hand, there was evidence indicating that petitioner, her parents and her attorney were informed that respondent possessed evidence of adulterous conduct on behalf of petitioner, and that when confronted with this information petitioner, after privately conferring with her attorney, did not deny the charges and consented to allow respondent to have custody of the children at least temporarily. Thereafter petitioner signed the property settlement agreement which, in addition to the terms of the property settlement, recited that the parties "have not cohabited or lived together as man and wife for upwards of two (2) years . . . ," that subject to court approval petitioner agreed "that the custody of the two minor children of the parties may be awarded to First Party [respondent], subject to her right of visitation . . . ," and that petitioner "has relied entirely upon her own knowledge and investigation of the financial condition of her husband." Although petitioner introduced voluminous testimony of doctors, psychiatrists, and others to show that she was mentally incompetent and under duress at the time the divorce negotiations transpired, and that these conditions continued to the time of respondent's death, yet it is clear that no one considered it necessary at any time to have a legal guardian appointed for her. Moreover, petitioner had the benefit of her parents' close attention and assistance in all that took place. And as for respondent's influence in the transactions, it is quite clear that all the documents were signed by petitioner out of the presence of respondent. We think the trial judge properly concluded that "in the face of such charge of adultery not denied

by petitioner, her attorney, Rathbun, obtained all the relief in her behalf that he could reasonably have been expected to obtain by way of property settlement, alimony, [and] custody of the minor children. . . ."

Upon the law and the facts before us we hold that respondent's motion to dismiss at the close of petitioner's case was properly granted. In view of our conclusions we find it unnecessary to consider other questions which have been argued. The judgment of the trial court is therefore affirmed.

Affirmed.

MURPHY, P. J. and ENGLISH, J., concur.