Joann Dare Varap, Plaintiff-Appellee and Cross-Appellant, v. Barney Varap, Defendant-Appellant and Cross-Appellee.

Gen. Nos. 50,433 and 50,656.

First District, Third Division.

November 3, 1966.

Emilie N. Wanderer, of Chicago, for appellant.

Epstein, Wilsey & Kirsh, of Chicago (Errol Zavett, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

The plaintiff and the defendant were married in 1959, lived together until 1962 and were divorced in 1965. The divorce was obtained by the plaintiff on the grounds of cruelty and desertion and she was awarded alimony in gross of $6,500 and attorney fees. The defendant appealed from the adverse decree and the plaintiff petitioned for temporary alimony pending the appeal and for attorney fees to defend the appeal. Her petition was granted. The defendant appealed from the post-decretal order and his two appeals have been consolidated. The plaintiff has cross-appealed from a finding in the divorce decree that she was not entitled to a fee interest in the home in which the parties lived.

This was the defendant's second marriage. His first wife obtained a divorce in Arizona in 1957. The defendant contends that the Arizona divorce was invalid and that because of this his marriage to the plaintiff was void ab initio and that she was not entitled to a divorce, alimony or attorney fees. The principal points urged by him in this appeal center around this contention. Sub-

ordinate points concern an order entered during the trial permitting the plaintiff to amend her complaint to add the charge of desertion; the amount of alimony awarded the plaintiff, and the lien for $6,500 granted the plaintiff on the home in which they lived. In her cross-appeal the plaintiff contends that, instead of being granted a lien she should have been declared the owner of a one-third fee interest in the property.

In an amended answer and in a counterclaim to the plaintiff's complaint, the defendant asserted that the divorce obtained by his first wife two years before his marriage to the plaintiff was void because the Arizona court did not have jurisdiction over his wife or himself. This affirmative defense was based on letters he had received from his wife which he claimed tended to show that she had not lived in Arizona for the period of time required by the law of that state as a condition precedent to obtaining a divorce and that she was not a resident of the county in which the divorce was filed. He claimed that he had no knowledge of this until 1963, although the letters were received by him in 1956 and 1957 and were at all times in his possession. He contended that jurisdiction over him was lacking because he had not been personally served with summons or served by publication. However, the exemplified copy of the Arizona divorce proceedings contained an affidavit that the summons and complaint had been served upon him by registered mail. The plaintiff moved to strike this portion of the pleadings and her motion was sustained.

█ The courts of one state must give full faith and credit to the divorce judgments of sister states (Williams v. North Carolina, 317 US 287, 87 L Ed 279 (1942)) but they may inquire whether or not the court of another state entering a prior judgment had jurisdiction of the parties and they can disregard the judgment if they find

407

it is void for lack of jurisdiction. Williams v. North Carolina, 325 US 226, 89 L Ed 1577 (1944); Field v. Field, 215 Ill 496, 74 NE 443 (1905).

If the defendant could sustain his burden of proof that his first wife was not domiciled in Arizona or that he was not properly before the Arizona court he could, under normal circumstances, contend that the court lacked jurisdiction to enter the prior judgment. However, because we hold that the defendant is estopped from claiming the invalidity of the prior decree, we do not find it necessary to ascertain whether or not the Arizona court was, in fact, lacking jurisdiction.

No case exactly like the present one has been brought to our attention but there are many cases which hold that a person who treats a divorce decree as valid by remarrying is estopped from later denying its validity. E. g.: McDonald v. Neale, 35 Ill App2d 140, 182 NE2d 366 (1962); Pierotti v. Pierotti, 343 Ill App 116, 98 NE2d 875 (1951); Scase v. Johnson, 130 Ill App 35 (1906); Blume v. Blume, 6 NYS2d 516 (1938); Rediker v. Rediker, 35 Cal2d 796, 221 P2d 1 (1950). In the Pierotti case the court said: "[T]he rule is well and generally settled that one who accepts the benefits and privileges of a divorce decree by a remarriage, even though the decree be void for want of jurisdiction, is estopped from thereafter assailing such decree." In McDonald the court explained that, "The rule of estoppel, founded upon the public policy of protecting the marital status and good character of innocent third persons, . . . whose status has been finalized by decree of divorce, will not permit parties to assert inconsistent legal rights. . . ." The general rule is well stated in Restatement, Conflict of Laws (1934) subsection 112, comment A: "A spouse who treats as valid a decree for divorce by remarrying is precluded from subsequently disputing the validity of the decree although he neither obtained the decree nor was personally before the court which rendered it."

408

■ The defendant admits in his amended answer that he had been informed that the prior divorce proceeding was legal and that he was not advised that it might be otherwise until his attorney in the present litigation did so. It is evident that he accepted and recognized the Arizona decree. Public policy dictates that the defendant be estopped from challenging the validity of the prior decree. It would be grossly unfair to allow him to escape the obligations he has incurred to his second spouse, whom he married in reliance upon the validity of the prior divorce, and who undoubtedly married him in the belief that he was free to enter into a valid marriage, by asserting the nullity of the former decree. The law will not tolerate such inconsistent positions. The trial court did not err in striking the portions of the defendant's answer and counterclaim which pertained to this point.

Furthermore, Ill Rev Stats 1963, c 40, par 1, declares in part that when there has been a bigamous marriage the injured party may obtain a divorce and dissolution of the marriage. Chapter 40, paragraph 20, provides that when a woman is granted a divorce from a man who had another spouse living at the time of the marriage, the court may allow the plaintiff alimony as in other divorce cases. While these provisions may not be used as the basis for our present holding because they were not raised in the trial court, they do demonstrate that it is not the policy of the legislature to frustrate a person in the plaintiff's position nor condone conduct such as the defendant's.

The defendant next urges that the trial court erred in allowing the plaintiff to amend her complaint during the trial to charge the additional ground of desertion. He claims that the plaintiff had not proven an independent ground for divorce at the time the amendment was permitted and therefore she did not have the right to assert a cause of action for desertion. The crux of the defendant's argument is that when a person abandons her spouse

she must have done so for reasons that would entitle her to a divorce before she would have a cause of action for desertion and since no such reasons existed in the present case the plaintiff did not have an action for desertion.

The plaintiff originally charged the defendant with cruelty. She testified that the defendant struck her without cause and threatened to kill her with a rifle on August 20, 1962. The defendant denied this. The plaintiff further testified that on November 21, 1962, while she was at the home of a friend of the family, the defendant came in and struck her again. Her testimony as to the latter date was corroborated by the friend and his thirteen-year-old daughter.

In his countercomplaint for divorce the defendant charged that the plaintiff committed adultery on the night of November 21, 1962, and he testified that, while looking through the window of the friend's home that evening, he observed the plaintiff come out of the friend's bedroom attired in a robe. He also introduced into evidence certain cards sent by the plaintiff to the friend which, he claimed, indicated that the relationship between them was something more than mere friendship.

The plaintiff denied that she had committed adultery at any time. The friend's thirteen-year-old daughter testified that the plaintiff was fully clothed and had wrapped Christmas presents and watched television with her all evening. The friend testified that the plaintiff was fully clothed at all times on the evening of November 21st, that he had not been alone with her, that he had gone to bed early that evening because he was recovering from an operation and that he was awakened when the defendant came into his house and struck the plaintiff. After that night the plaintiff did not return to live with the defendant.

While it is true that the plaintiff's testimony as to the events of August 20, 1962, was not corroborated,

corroboration is not necessary in a contested divorce proceeding. Surratt v. Surratt, 12 Ill2d 21, 145 NE2d 594 (1957). The plaintiff's testimony as to the events of November 21, 1962, was corroborated by two eyewitnesses. The trial court found that the defendant had committed acts of cruelty on both dates. Two acts of physical violence resulting in pain and bodily harm committed on separate occasions constitute sufficient grounds for divorce. Tuyls v. Tuyls, 21 Ill2d 192, 171 NE2d 779 (1961). When a determination of the facts depends upon the weight and credibility to be given to the testimony of witnesses, a reviewing court will not reverse the finding of the trial court unless the finding is against the manifest weight of the evidence. Stockman v. Stockman, 38 Ill App2d 186, 186 NE2d 547 (1963). In the present case the trial court's finding was not contrary to the manifest weight of the evidence.

■ ■ Desertion for a period of one year constitutes a ground for divorce, Ill Rev Stats 1963, c 40, par 1, and the statute is applicable not only in cases where the complaining party is actually abandoned but also where she herself abandons her spouse for causes which would have entitled her to a divorce. Lemon v. Lemon, 14 Ill2d 15, 150 NE2d 608 (1958); Webber v. Webber, 349 Ill App 154, 110 NE2d 95 (1953). There was no element of surprise presented to the defendant when, after more than one year had elapsed since the plaintiff justifiably abandoned him, the plaintiff amended her complaint to include the ground of desertion. The plaintiff had proved that the defendant's cruelty entitled her to a divorce and the charge of desertion arose from the same acts of cruelty. Although the present litigation was pending for the greater portion of the one year required to satisfy the desertion charge, Ill Rev Stats 1963, c 40, subsec 1, provides that the time consumed by such litigation shall not be deducted in any computation of the desertion period. Wide discretion is given to the trial court in permitting

pleadings to be amended (Ill Rev Stats 1963, c 110, § 46) and the court's discretion was not abused in allowing the amendment for desertion.

The defendant further contends that it was error for the trial court to grant the plaintiff a lien on the property in which they lived as security for her alimony in gross. In her cross-appeal the plaintiff claims that she should have been granted a one-third interest in the property.

Three days prior to their marriage the parties, along with the mother of the defendant, who was allowed to intervene in the divorce proceeding, signed an offer to purchase certain property located in Prospect Heights, Illinois. The property was finally purchased some three months after the marriage with title to the realty being taken in the names of the plaintiff, the defendant and the defendant's mother as joint tenants. The defendant's mother furnished the entire consideration paid at that time ($30,000) and the three joint tenants signed a mortgage for $16,500.

The defendant testified that no gift was intended to the plaintiff and that the only reason that title was taken in her name was that her signature was required on the mortgage. He testified that he and the plaintiff conversed about the realty prior to the purchase and that he told her the home would be the property of his mother at all times. The plaintiff testified that her name was placed on the title as joint owner not merely for convenience sake; that she and the defendant had picked out the home; that the defendant had full control of his mother's funds, and that she had agreed with the defendant prior to their marriage to take care of his mother. The testimony of the mother was not too clear. She is an elderly woman of foreign descent who was questioned through an interpreter. Her testimony is contradictory in that she stated that she had never given the home to anyone, but she replied in the affirmative when asked if she thought it was a wedding present for her son.

The trial court found that the plaintiff did not receive a one-third fee interest in the property as a gift but that the realty was the property of the mother subject to the interests of both the plaintiff and defendant. The court granted the plaintiff a lien on the realty to the extent of her alimony in gross with the further order that, when the defendant paid the alimony, the plaintiff was to quitclaim any interest in the property to the defendant's mother.

When real property is bought with the money of one person and the deed conveys title to the payor and another, the law presumes that the payor-grantee is the beneficial owner of the property and the other grantee will be declared a trustee for the person who furnished the consideration. West v. Scott, 6 Ill2d 167, 128 NE2d 734 (1955). This presumption may be rebutted by the other grantee by showing that at the time of the conveyance the purchaser intended the grantee to have a beneficial interest. Prassa v. Corcoran, 24 Ill2d 288, 181 NE2d 138 (1962). However, when a parent purchases property and title is taken in her name and that of her children there is a presumption that the transfer was a gift to the children. Moore v. Moore, 9 Ill2d 536, 138 NE2d 562 (1957). Such a presumption can only be overcome by clear and convincing evidence. This presumption of gift does not arise where the relationship between the payor and the grantee is more remote—i. e., there is no presumption of a gift to a son-in-law. Ryan v. Ryan, 267 Ala 677, 104 So2d 700 (1958).

In the present case there was no presumption that a gift was intended to the plaintiff, a daughter-in-law. In fact, the contrary presumption of a resulting trust arose and she had the burden of overcoming this presumption and showing that a gift to her was intended. While there was some evidence that a gift was intended there was also evidence to the contrary. The plaintiff had the burden of proof on this issue and since the evidence

413

was contradictory we cannot say that the trial court erred in finding that she had not overcome this burden.

 The fact that title was taken in the name of the defendant, a son, raised a rebuttable presumption that a gift was intended for him. It is the intention at the time of the gift that is controlling. The burden of proof is upon the person seeking to establish a resulting trust and the evidence, to be effective for such purpose, must be clear, convincing, unequivocal and unmistakable; and if doubtful or capable of reasonable explanation upon any other theory than the existence of a trust it is insufficient. Baker v. Baker, 412 Ill 511, 107 NE2d 711 (1952). Spina v. Spina, 372 Ill 50, 22 NE2d 687 (1939). The evidence as to this point is contradictory. The defendant testified that no gift was intended; however, his mother testified both ways. She said that she thought that it was a wedding gift to her son and that she never made a gift of the home to anyone. The conflicting evidence supported a finding that the presumption of a gift was not overcome, and the trial court accordingly found that the defendant had an equity in the property.

██ ██ Having found that the defendant had an interest in the property it was not error for the trial court to grant the plaintiff a lien on defendant's interest. Under Ill Rev Stats 1963, c 22, pars 44 and 45, the trial court has the power to grant a lien on realty and the court can make an allowance to a wife a lien on a defendant's realty. Klosowski v. Klosowski, 266 Ill 360, 107 NE 634 (1915).

 The plaintiff's alternative theory that the conveyance was made to her and the defendant in consideration of their promise to care for the defendant's mother in her old age must also fail. In the first place, there is no evidence of an agreement between the mother and the parties on this subject. There is disputed evidence of a conversation between the plaintiff and the defendant

on the topic but this could not bind the mother. In the second place, if there was an agreement to care for the mother, there has been a failure of consideration on the part of the plaintiff and a court will set aside a deed given in consideration of future support of the grantor when there is a subsequent substantial failure on the part of the grantee to comply with her promise. Bradecich v. Rivard, 411 Ill 214, 103 NE2d 367 (1952); Brown v. White, 410 Ill 366, 102 NE2d 111 (1952).

 ██ On a showing of probable cause the plaintiff was awarded $22.50 per week pending the outcome of the divorce action and solicitor's fees. At the time of the divorce the defendant was $1,350 in arrears in temporary alimony and the decree of divorce awarded plaintiff this arrearage, the sum of $6,500 as alimony in gross and attorney's fees. A post-decretal order was entered directing the defendant to pay $15 per week temporary alimony pending the appeal and attorney's fees with which to defend the appeal. The defendant appeals from all three alimony awards. In his brief the defendant states that he is also appealing from the orders allowing attorney fees and he refers to them in his argument. He did not, however, include this point in the brief's Points and Authorities. The Points and Authorities is the statement of the grounds upon which an appellant relies and the argument of an appellant is limited to the points made. By not raising the question of attorney fees in his Points and Authorities the defendant is deemed to have waived it. Appellate Court Rule 5(2)(k); Supreme Court Rule 39(1) IV; Bourne v. Seal, 53 Ill App2d 155, 203 NE2d 12 (1965); In Re Gersch's Estate, 43 Ill App2d 224, 193 NE2d 208 (1963).

 The allowance of temporary alimony authorized by Ill Rev Stats (1963) c 40, par 16, is largely within the discretion of the trial court and is dependent upon the circumstances of the parties. Rabin v. Rabin,

415

■■■■■

57 Ill App2d 193, 206 NE2d 850 (1965). A court of review will refuse to alter such an order unless the court's discretion appears to have been improperly exercised. Bush v. Bush, 316 Ill App 295, 44 NE2d 767 (1942). The same rule applies to the allowance of alimony in gross (Ill Rev Stats 1963, c 40, par 19; Doyle v. Doyle, 268 Ill 96, 108 NE 796 (1915)) and to the allowance of alimony while an appeal is pending. (Ill Rev Stats 1963, c 40, par 16.)

■■ ■■ We have reviewed the evidence concerning the circumstances, occupations, income and expenses of the plaintiff and defendant which was presented to the various trial judges when temporary alimony, alimony in gross and alimony during the pendency of this appeal were awarded. In view of this evidence, which we believe would be superfluous to detail, we cannot say that any judge abused his discretion or that the allowance made at any juncture of this case was so out of line that it would justify reversal.

The decree of the Divorce Division of the Circuit Court will be affirmed.

Affirmed.

SULLIVAN, P. J. and SCHWARTZ, J., concur.