RUSSELL P. BIONDOLINO, Petitioner-Appellant, *v.* MARY ELLEN BIONDOLINO, Respondent-Appellee.

Fifth District    No. 80-347

Opinion filed March 18, 1981.

Jeffrey D. Richardson, of Rosenberg, Rosenberg, Bickes, Johnson & Richardson, Chartered, of Decatur, for appellant.

George L. Consoer, Jr., of Fribley & Proffitt, of Pana, for appellee.

Mr. JUSTICE WELCH delivered the opinion of the court:

Russell Biondolino (husband) filed a petition to modify the terms of his 1975 decree of divorce from Mary Ellen Biondolino (wife) by reducing his maintenance obligation of $500 per month. The trial court entered an order effective for a period of six months during which time real property of the husband, including the marital home which had been awarded to him by the divorce decree, was up for sale. The order directed that the husband pay $200 per month maintenance and that a "charge" of $300 per month be put against the property, to be satisfied from the sale. The matter was set for review after six months. From that order, the husband appeals.

The husband asserts that the court abused its discretion by failing to terminate maintenance entirely and that it exceeded its authority by placing a lien upon the husband's property.

The record reveals that Russell and Mary Ellen Biondolino were married 27 years and had three children, all of whom were emancipated by 1974. They separated in July 1974, and the husband filed for divorce

that November. In October 1974, in anticipation of the divorce, the husband and wife executed an extensive property settlement agreement. The agreement was approved by the court and incorporated into the decree for divorce granted January 21, 1975.

By the terms of the agreement the wife relinquished her claim on the marital home and furnishings and the sizeable tract of land on which the house stood. She also gave up any interest in a 1971 Lincoln Mark III automobile, a 1958 Cessna airplane, a 65 x 14 foot mobile home, and 58 shares of insurance company stock. In turn for relinquishing her rights in the marital property the wife received a 1973 Mercury Montego with the indebtedness on it, 58 shares of insurance company stock, a sewing machine, her clothing and personal effects, and maintenance on a decreasing schedule. At the time of the divorce and for 14 months afterward, she received $758.08 per month maintenance. The payments dropped to $620 per month for another 20 months, and then to $500 per month thereafter until death, remarriage, or further order of court.

The husband was a successful businessman operating an insurance agency at the time of the divorce. In 1974 he grossed $96,900 for the year and had a net taxable income of $53,600. For five to eight years prior to the divorce he had grossed from $90,000 to $100,000 per year. After the divorce he continued to gross more than $90,000 per year until 1979, when he only grossed $36,394 for the year. His net taxable income declined steadily, even when his gross income increased.

After the divorce the husband bought additional real property consisting of an A-frame house on a lot in Langleyville, Illinois, and a 1977 Lincoln automobile. He also had a 1971 Comet automobile. He sold the mobile home shortly after the divorce. He had unexpectedly high costs for remodeling the A-frame which he had intended to use as a home and office combined. Business slowed in 1979 and he grossed $36,394, but had a taxable income of minus $1,400. He did stay current on the alimony payments, however.

From 1977 on, the wife worked as a doctor's assistant. She grossed $7,500 in 1979, with not much prospect for advancement. She lived in government-subsidized rental housing in a very modest style.

February 7, 1980, the husband filed a petition for modification of the decree for divorce, based upon his decreased income and the fact that the wife was now earning some money. The prayer requested that the court "provide for a reasonable amount of alimony commensurate with his income and the income of" the wife. A hearing on the petition for modification was had April 1, 1980, before Judge Bill J. Slater. Judge Slater announced an order at the end of the hearing, directing that the husband pay $200 per month in "money" and allow the $300 per month balance of the maintenance to be "charged" against the real estate. There

had been testimony that both the A-frame and the large house (marital domicile) had been up for sale for some time at the time of the hearing. The judge said, "Now, if the real estate is sold and taken care of I expect the money to be paid out of that." He set the matter for review within six months and made it clear that the order was for six months only. He directed the attorneys to reduce the order to writing.

The order was not reduced to writing, but the husband filed a motion for rehearing on April 25, 1980, alleging that the order of the court was unclear. On June 9, 1980, a rehearing was held, with the husband represented by different counsel. Essentially the same arguments were made, although the husband's counsel suggested terminating maintenance altogether as one alternative. The judge declined to do that and reiterated that the currently due maintenance payments were to be $200 per month, from April 1, 1980, payable through the clerk of the court. A monthly amount of $300 beginning April 1, 1980, was to be a "charge" against the property. If the property was sold within six months, the wife was to receive the accrued charge amount from the proceeds of the sale. If the property was not sold within six months, the husband was not to pay the $300 per month from other sources. The judge repeated that he would review the matter in October, six months after the April decision.

The order was reduced to writing and signed by the judge on June 24, 1980. The husband appeals from that order.

The husband asserts that the trial court abused its discretion by failing to terminate maintenance completely, and that it exceeded its authority by placing a lien against the real property.

■■ ■ The trial court took note of the fact that the $500 per month maintenance amount was set by the parties as a contractual agreement, not ordered by court in settlement of a dispute. The fact of the contract influenced the judge and he made an effort to keep the underlying terms intact while taking the husband's cash-poor situation into account. The judge noted that the husband had sizeable assets which should be worth something. He set the matter for review in six months with the expectation that the assets would be disposed of by then and he would know better what the husband's ability to pay the full $500 per month on a continuing basis was. "A modification of an alimony award will not be set aside on review unless the trial court clearly abused its discretion." (*Shive v. Shive* (1978), 57 Ill. App. 3d 754, 764, 373 N.E.2d 557, 561, *appeal denied* (1978), 71 Ill. 2d 606.) The judge in the instant case indicated that if the sale of the assets did not bring enough to pay the $300 per month, that the wife "would be out." In other words the judge would review the maintenance award and consider reducing it on a permanent basis if the assets proved valueless. We cannot say this was an abuse of discretion.

The husband argues that the court exceeded its authority by placing a lien against the former marital home which was awarded to him in the property settlement, as well as against the A-frame which he acquired subsequent to the dissolution. He asserts that the lien is a proprietary interest in the property and that what the court has in effect done is to change the property settlement without having grounds to set aside the original dissolution decree (Ill. Rev. Stat. 1979, ch. 40, par. 510(a)).

■■ Although the court has the authority to make an allowance to a wife a lien on the husband's realty (*Varap v. Varap* (1966), 76 Ill. App. 2d 402, 414, 222 N.E.2d 77, 84), the "charge" against the property in this case was more in the nature of a deferred obligation. The judge made it clear that the charge was for six months only, subject to review and further order of court. We find that the court did not exceed its authority.

Accordingly, we affirm.

KASSERMAN, P. J., and JONES, J., concur.