*In re* MARRIAGE OF MARION M. PAULIUS, Plaintiff-Appellee, and CHARLES D. PAULIUS, Defendant-Appellant.

First District (2nd Division)   No. 84—716

Opinion filed March 5, 1985.

Bernard Hammer, Ltd., of Chicago, for appellant.

Richard Altieri, Ltd., of Chicago, for appellee.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Marion and Charles Paulius were married in July of 1970. On February 21, 1980, Marion filed a petition for dissolution of marriage. The petition contained an allegation that Charles was guilty of extreme and repeated mental cruelty toward Marion, without any fault or provocation on her part. Charles' response to the petition denied the allegation. On March 11, 1981, Marion filed a notice of motion to present a second amended petition for dissolution of marriage. No copy of the amended petition, however, can be found in the record. An order was entered on March 3, 1982, granting Charles leave to amend his response to the petition for dissolution and to add a coun-

terclaim for dissolution of marriage.

In his amended response, Charles admitted that he was guilty of extreme and repeated mental cruelty toward Marion. His response, however, refers to paragraphs 5, 5(a), (b), (c), (d), (e) and (f) of Marion's petition, though there are no such subparagraphs in her original petition and no other petition is found in the record. Charles' response further stated that Marion was guilty of the same conduct toward him, without cause or provocation on his part.

On May 26, 1982, a judgment of dissolution was entered. The judgment was entered on Marion's petition for dissolution and Charles' response and amendment thereto. Paragraph 3 stated that, without cause or provocation, Charles had been guilty of extreme and repeated mental cruelty. Paragraph 4 stated that, without cause or provocation, Marion had been guilty of the same conduct. The judgment also provided for custody of the children and a visitation schedule. On December 27, 1982, a supplement to the judgment was entered, taking into account evidence and testimony adduced at contested matters subsequent to the original judgment. The supplemental judgment denied Charles' petition for modification and reduction of support, found Charles to be $15,040 in arrears based on a temporary order of support and in wilful contempt for his failure to pay that amount, and awarded certain properties to each party. On May 31, 1983, Charles filed a petition to enforce the child visitation provisions of the original judgment. An order was entered on June 15, 1983, allowing Charles' visitation with his children. A similar order was entered on August 12, 1983.

On November 1, 1983, Charles filed a petition to vacate and expunge void judgment. Charles alleged that the reciprocal findings of mental cruelty in the original judgment rendered it void on its face under the authority of *In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 440 N.E.2d 840, and, consequently, that the judgment should be vacated. Marion's answer requested the court to deny Charles' petition and to delete and strike the finding of mental cruelty as to Marion, *nunc pro tunc* as of May 26, 1982, the day the judgment was entered. On February 24, 1984, the trial court denied Charles' petition to vacate and expunge; the court further ordered that the finding of mental cruelty as to Marion was superfluous and was therefore stricken and deleted from the judgment *nunc pro tunc* as of May 26, 1982. It is from that order that Charles appeals.

As additional factual matter, our examination of the record prior to oral argument disclosed references to the effect that Charles had remarried after the original judgment was entered and before he filed

his petition to vacate and expunge. In her answer to Charles' petition to vacate, Marion alleged that Charles should be estopped—that he had no legal or equitable basis to attack said judgment directly or collaterally—for the reason that he had remarried subsequent to May 26, 1982, in reliance on the validity of the judgment and the property settlement. In his reply to Marion's answer, Charles does not deny his remarriage, but rather asserts that remarriage does not vitalize or validate a void dissolution judgment. Finally, at the hearing on Charles' petition to vacate, the trial court stated: "The question that I have first heard crying out for an answer is what sanctions must be imposed upon a person who allows himself to remarry, to mislead the spouse into believing that there is a valid judgment entered because of the language put in at his request, stating there is no *** contest, as to grounds, and then when the piper is to be paid, that is, the support of the family, the objections are raised so as to avoid the responsibilities of life that the law places upon an individual."

At oral argument, Charles' attorney was specifically asked whether there had been a remarriage. The essential tenor of counsel's response was that any such allegation was *dehors* the record. Given the references to said remarriage in the record, we disagreed. Accordingly, pursuant to Supreme Court Rule 366 (87 Ill. 2d R. 366), we ordered the trial court to determine whether, in fact, Charles had remarried subsequent to the entry of the decree. Charles then filed a motion to vacate our order, which we denied. Charles then filed an emergency complaint for an order of prohibition against this court and the circuit court with our supreme court seeking to block the effect of our Rule 366 order. The supreme court denied the emergency complaint and, on December 20, 1984, an order was entered by the circuit court and filed with this court on December 21, 1984, stating that subsequent to the entry of the judgment of dissolution on May 26, 1982, Charles had in fact married one Nancy Lockwood on October 16, 1982.

This appeal thus raises the question of whether a party can move to vacate an allegedly void dissolution judgment when that party has remarried subsequent to the entry of that judgment. The long-established principle in this State is that a party accepting the benefits of a divorce decree may be estopped from later challenging the validity of that decree. (See *Grimm v. Grimm* (1922), 302 Ill. 511, 514, 135 N.E. 19; *Scase v. Johnson* (1906), 130 Ill. App. 35, 36.) Numerous cases have held that a person who remarries in reliance on the validity of the prior divorce decree has accepted the benefits of that decree and is estopped from subsequently challenging its validity. *In re Marriage*

*of Gryka* (1980), 90 Ill. App. 3d 443, 446, 413 N.E.2d 153, and cases cited therein.

Charles has raised two arguments in support of his position that he is not estopped to deny the validity of the judgment. First, that the essential element of equitable estoppel, good-faith reliance on the conduct of another by a party to his detriment, is lacking in that there is no proof that Marion has in any way relied on Charles' conduct to her detriment. Second, that equitable estoppel does not apply where, as Charles here alleges, the judgment is void on its face.

Addressing Charles' contention that an essential element of equitable estoppel, detrimental reliance, is not present here requires an examination of the conceptual underpinnings of the general rule that one who remarries in reliance on the validity of a decree is estopped from later asserting its invalidity. Charles' reply brief and supplemental reply brief argue at length that the concept of estoppel by remarriage applies only when the respondent to the petition to vacate has suffered a detrimental change of position (*e.g.*, remarrying and starting a new family) and that cases suggesting that the petitioner can be estopped in the absence of such reliance by the respondent are predicated on *dicta* from earlier opinions. Specifically, Charles argues that *In re Marriage of Gryka* is inapposite even though the issue presented there was whether a person seeking to challenge a decree as void for lack of subject matter jurisdiction may do so when that person has since remarried in apparent reliance on the validity of that decree and had a child from the second marriage. (90 Ill. App. 3d 443, 448.) Charles argues the inapplicability of *Gryka* because of its reliance on *dicta* from earlier cases. (See *McDonald v. Neale* (1962), 35 Ill. App. 2d 140, 182 N.E.2d 366, *cert. denied* (1963), 372 U.S. 911, 9 L. Ed. 2d 719, 83 S. Ct. 725; *Pierotti v. Pierotti* (1951), 343 Ill. App. 116, 98 N.E.2d 875.) Charles also attempts to distinguish *Gryka* on the basis that the judgment there was not void on its face, as it allegedly is here, and that the party in *Gryka* did not challenge the estoppel principles, as Charles does here. We find no merit to these arguments. First, the petitioner in *Gryka* accepted only the general statement of law relative to estoppel, and went on to challenge its application to his factual situation, as Charles does here. (90 Ill. App. 3d 443, 446.) Also, as explained later in this opinion, the decree in the instant case is not void on its face. Thus, we find *Gryka* to be generally dispositive of this matter. However, further analysis is necessary to effectively apply the principles of the estoppel by remarriage cases to this action and to fully dispose of Charles' arguments in this appeal.

In cases where the responding party has remarried and seeks to interpose the defense of estoppel to the movant's petition to vacate, our research discloses that the appropriate defense is entitled "equitable estoppel." (See, *e.g.*, *Guelzo v. Guelzo* (1937), 292 Ill. App. 151, 10 N.E.2d 881 (the petitioner had also accepted monetary benefits under the decree).) However, in none of the other cases that we have discovered has only the responding party relied on the decree, and in all the cases, the courts speak of "estoppel." In *Scase v. Johnson* (1906), 130 Ill. App. 35, both parties had remarried after the decree was entered and the petitioning party was "estopped to deny" the validity of an act the benefit of which he had accepted. (130 Ill. App. 35, 36, 37.) In *Guggenheim v. Guggenheim* (1914), 189 Ill. App. 146, both parties had remarried and the petitioning party was "subject to all the rules of equitable limitation and equitable estoppel." (189 Ill. App. 146, 149.) In *Grimm v. Grimm* (1922), 302 Ill. 511, 135 N.E. 19, only the petitioning party had remarried and he was "estopped *** to deny" the validity of the decree. (302 Ill. 511, 514.) See also *Pierotti v. Pierotti* (1951), 343 Ill. App. 116, 98 N.E.2d 875 (both had remarried and petitioner estopped); *McDonald v. Neale* (1962), 35 Ill. App. 2d 140, 182 N.E.2d 366, *cert. denied* (1963), 372 U.S. 911, 9 L. Ed. 2d 719, 83 S. Ct. 725 (petitioner alone remarried and was estopped); *Henley v. Houck* (1964), 49 Ill. App. 2d 472, 200 N.E.2d 99 (petitioner alone remarried and was estopped); *Varap v. Varap* (1966), 76 Ill. App. 2d 402, 222 N.E.2d 77 (petitioner estopped from attacking his first divorce decree because of his subsequent remarriage to respondent); *Webb v. Webb* (1970), 130 Ill. App. 2d 618, 620-21, 264 N.E.2d 594 (petitioner alone remarried and "[t]he rule that a person who has accepted the benefits of a divorce decree should not be permitted to attack the same, is a rule of estoppel ***"); *Baker v. Baker* (1971), 2 Ill. App. 3d 795, 276 N.E.2d 792 (petitioner alone remarried and, having accepted benefits of decree, was estopped); *Martin v. Martin* (1978), 57 Ill. App. 3d 486, 373 N.E.2d 602 (both parties remarried and petitioner estopped); *In re Marriage of Gryka* (1980), 90 Ill. App. 3d 443, 413 N.E.2d 153 (husband remarried and estopped from challenging decree).

■ A careful reading of the cases estopping the petitioner from assailing the decree when the petitioner alone has remarried, or when the petitioner alone has accepted other benefits under the decree, or both, leads this court to conclude that, even though the cases speak in terms of estoppel, they are in fact using the term in its more general sense, meaning to stop or bar one from raising a challenge. We do not read these opinions as literally applying concepts of equitable estoppel

and its concomitant principle of preventing prejudice to the other party. Rather, our research indicates that these cases have generally commingled the substance of estoppel and the substance of ratification. (See *Greene v. Greene* (Mass. 1854), 61 Am. Dec. 454, and note at 465-66.) As explained in Black's Law Dictionary: "The substance of 'estoppel' is the inducement of another to act to his prejudice. The substance of 'ratification' is confirmation after conduct." (Black's Law Dictionary 495 (5th ed. 1979).) Thus, in situations such as the one present here, Charles' act of remarrying in reliance on the decree is an acceptance of the benefits of that decree; it is an admission as to the legality of that decree; foremost, his remarriage acts as a ratification or confirmation of that decree. Hence, Charles is now prevented from assailing that decree either by "estoppel" or by having waived his right to prosecute this appeal. (See 9 Ruling Case Law sec. 280, at 467.) The law in Illinois has been settled since at least 1867 that "a party cannot accept money, directed to be paid him by a decree, and then ask a reversal on the ground that it did not give him enough. His acceptance was a ratification." (*Holt v. Rees* (1867), 46 Ill. 181, 184.) Similarly, remarriage in reliance on a decree is also an acceptance of benefits under that decree because the decree has enabled the party to lawfully remarry. (*In re Marriage of Gryka* (1980), 90 Ill. App. 3d 443, 446, 413 N.E.2d 153.) Here, however, Charles not only remarried in reliance on the decree, he also enforced his child visitation rights thereunder. Consequently, Charles is not in any position to attempt to have that decree vacated.

A vacatur under these facts would also create a difficult situation regarding Charles' new wife and any children they may have had. Although sections 303 and 305 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1981, ch. 40, pars. 303, 305) would afford some protection to these persons, Charles has not presented either this court or the trial court with any reasonable basis for not affording these persons the same legal status they now enjoy. Further, the inference we draw from the record, suggested by the language of the trial court we quoted above, is that Charles is attempting to avoid paying the family obligations imposed by the decree. Charles acquiesced in the original judgment until it was apparently no longer advantageous to do so. The supplemental judgment had found Charles to be over $15,000 in arrears in support payments and in wilful contempt for having failed to pay that amount. If Charles were successful in vacating the original judgment as void, all subsequent orders against him would also be rendered void, thus extinguishing his arrearage, at least temporarily. This court is loathe to aid a person's at-

tempt at circumventing legal obligations owed to that person's family.

Charles attempts to bypass the effect of his remarriage on his legal position in this court by arguing that equitable principles do not prevent him from challenging the decree when it is void on its face because of the reciprocal findings. In support, Charles cites *In re Marriage of Eltrevoog* (1982), 92 Ill. 2d 66, 440 N.E.2d 840. In that case, the trial court had included reciprocal findings of fault in the judgment, nearly identical to those present here. The trial court had also declared section 402 of the Illinois Marriage and Dissolution of Marriage Act unconstitutional. On direct appeal, the supreme court vacated the judgment and the cause was remanded. The court stated: "Those separate [reciprocal] findings by the trial court are totally inconsistent and wholly irreconcilable ***. [They] simply contradict one another. Such findings cannot stand together." 92 Ill. 2d 66, 70-71.

Contrary to Charles' repeated assertions, the *Eltrevoog* court never explicitly called the judgment void. Also, no estoppel or ratification argument had been raised in that case. Additionally, it should be noted that in *Tucker v. Tucker* (1975), 29 Ill. App. 3d 489, 330 N.E.2d 274, it was argued, as here, that the decree was void on its face because it granted each party a divorce upon the grounds of mental cruelty. The appellate court there concluded that the decree was erroneous and subject to direct attack, but was not void and subject to a collateral attack. (29 Ill. App. 3d 489, 492.) In general, judgments are void only when the court lacks subject matter jurisdiction, lacks personal jurisdiction, where there has been some fraud practiced upon the court, or where the court lacks the inherent authority to act, as where a notice of appeal and supersedeas has been filed. (*Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 546, 390 N,E.2d 28; *Federal Sign & Signal Corp. v. Czubak* (1978), 57 Ill. App. 3d 176, 179, 372 N.E.2d 965.) There is no question in the instant case that the court had full jurisdiction over the subject matter and the parties and that its inherent authority to act had not been vitiated; nor was a fraud practiced upon the court. Thus, under general principles, the judgment was not void. Nor do we read *Eltrevoog* as holding such a judgment void. It would have been a simple matter for the *Eltrevoog* court to have called the judgment void, but it clearly chose not to do so. Additionally, *Eltrevoog* made no mention of the *Tucker* decision, which specifically held that a judgment was not void where it found both parties to be guilty of mental cruelty and granted each a divorce. To be sure, under both *Eltrevoog* and *Tucker*, the judgment here is certainly defective and would be vacated on direct appeal but for Charles' act of ratification.

As additional support for his position, Charles places much reliance on *Collins v. Collins* (1958), 14 Ill. 2d 178, 151 N.E.2d 813. However, we find *Collins* to be readily distinguishable. There, the plaintiff, then Ida Roberts, married William Collins on December 23, 1953. The two lived as husband and wife until April 20, 1955. Plaintiff filed a divorce action on June 25, 1955, charging her husband with habitual drunkenness for the space of two years after their marriage. On July 26, 1955, the decree of divorce was entered and on August 6, 1955, plaintiff remarried. The second marriage was subsequently annulled on June 15, 1956, and on August 30, 1956, plaintiff sought to vacate the first decree entered on July 26, 1955. By August of 1956, however, Mr. Collins had died and his heirs were substituted as defendants. The supreme court affirmed the vacatur of the decree because the face of the complaint and the decree affirmatively showed that the husband could not have been a drunk for two years after the marriage. Also, the court held that the plaintiff was not estopped from assailing the decree because of her subsequent remarriage. The court found that the issue had been waived, and that even had it not been waived, all the parties could have been placed in the same positions they occupied prior to the divorce, if all such persons were alive. (14 Ill. 2d 178, 183-85.) The opinion was a modified opinion that eliminated earlier language holding the decree to be void. 14 Ill. 2d 178, 186 (Schaefer, J., dissenting).

Again, contrary to Charles' assertion, *Collins* does not declare the decree void, as was explicitly pointed out in the dissent in that case, even though the decree and complaint on their face demonstrated a violation of the statutory standard for a divorce based upon drunkenness. Charles, however, also asserts that *Collins* supports the proposition that a party cannot be precluded under equitable principles from attacking a judgment which is void on its face. As we have stated, the *Collins* court did not hold the judgment void. Also, regarding Charles' argument that *Collins* requires a vacatur because of that court's decision to ignore equitable principles when the decree was *prima facie* violative of the statutory standard, as alleged here, we find *Collins* to be inapposite. When the plaintiff in *Collins* sought the vacatur, she was no longer married, contrary to Charles' present position. Also, the court specifically stated that the estoppel issue had been waived. Moreover, it was apparent that the parties could all have been restored to their exact status if all had been alive. In the instant case it is obvious that all the parties cannot be returned to their exact status because of Charles' remarriage; further, the "estoppel" issue has not been waived. Additionally, the dissent in *Collins* found no log-

ical reason to ignore equitable principles in such a factual situation. (14 Ill. 2d 178, 188-90 (Schaefer, J., dissenting).) We do not hesitate, therefore, to preclude Charles from attacking the decree even though it contained wholly inconsistent findings, as in *Eltrevoog* and *Tucker*, and is apparently violative of the statutory standard, as was the decree in the *Collins* case. By his conduct, Charles is estopped from attacking the judgment of dissolution. Our disposition of this cause makes it unnecessary to address Charles' contention that a *nunc pro tunc* order was inappropriate under the circumstances.

Based upon the foregoing, the decision of the trial court dismissing Charles' petition to vacate is affirmed.

Affirmed.

PERLIN and HARTMAN, JJ., concur.